[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was commenced by the plaintiff's complaint dated November 25, 1992 which was returned to court on December 3, 1992. The defendant Esabel Vilar filed an answer to the plaintiff's complaint on August 2, 1992 and a revised answer dated August 17, 1993. The matter was tried to the court. It arose out of an automobile accident on June 12, 1991, at approximately 5:15 p. m. at the intersection of Manor Avenue and Wolcott Street in Waterbury, Connecticut. The plaintiff Mary Giglio was a passenger in the right front seat of an automobile being operated by her husband. The vehicle in which the plaintiff was a passenger was stopped at a traffic control signal when it was struck from behind by a vehicle being operated by the defendant. At the time of the accident the plaintiff testified she was wearing a seat belt and the impact of the defendant's vehicle hitting her vehicle caused her body to move forward and backward. She was taken from the scene by ambulance to St. Mary's Hospital where she was treated and released that night. She testified she had a sharp pain in her CT Page 1678 neck and hip after the accident.
The plaintiff is a forty-seven year old woman who prior to this accident had some problems with her neck, back and hip and also had headaches. Since approximately 1989 she had been treating with doctors for arthritis in her joints and for pain in her hips and neck. She also had a disc bulge in her back prior to this accident. (See Exhibit A). In fact, there was even a discussion of surgery and the need to do a myelogram on the plaintiff. (See Exhibit 2 Doctor Peck's note of February 7, 1990.) In 1989 the plaintiff saw Doctor Steven Torrey of Neurosurgery Associates of Northwest Connecticut PC for evaluation of pain in the right arm. Doctor Torrey in his report of December 14, 1989 did rule out that the plaintiff had a disc herniation at that time. However, despite all of the medical problems the evidence was overwhelming that prior to the accident the plaintiff could perform any activity she wished. The testimony of the plaintiff, her husband, her daughter and her friend Suezette Millette was that prior to this accident she had no limitations relative to her housework or daily activities. At the time of the accident the plaintiff was a volunteer teacher's aid in the kindergarten grade at St. Joseph's Grammar School. She testified she had no problem performing her duties as a teacher's aid and that this position required her to do a lot of bending etc. to see to the needs of the students. She testified she worked anywhere from one day per week to five days per week in this position. Janice Senich, the kindergarten teacher with whom the plaintiff worked from September 1990 to June 1991 testified that she never saw any physical disabilities in the plaintiff. Mrs. Senich stated she never had to help the plaintiff with any of her duties.
The plaintiff testified that since this accident she has had much pain and discomfort in the neck, hip and back areas. She also testified that since the accident the severity of her headaches has increased. She stated that now she has good days and bad days and that she has neck and hip pain daily. She can no longer perform the activities she could prior to this accident. Mrs. Giglio testified that she has not been able to do her own housework since the accident. A friend Cynthia Campagna testified that she cleans the plaintiff's house for her two times per week and in the spring and fall each year. On one occasion Mrs. Campagna testified the plaintiff put on her (Mrs. Campagna) grandson's shoes and when she tried to get up after doing this, she could not without help. The plaintiff testified CT Page 1679 that today she can't fold more than three towels without her neck hurting her and that she can't vacuum above her head nor can she lift too much weight anymore. Today the plaintiff can drive an automobile but it is uncomfortable and she cannot parallel park because of pain when she turns her neck. Mrs. Giglio testified she cannot go shopping any more unless someone is with her because she cannot reach up or down for items. She testified she no longer goes shopping in malls because she cannot walk for long periods of time.
Doctor Richard Matza, an orthopedic surgeon, who treated the plaintiff after the accident testified that the plaintiff reached maximum improvement in September 1993 and that she has a twelve (12%) percent permanent partial disability of the neck of which six (6%) percent is due to this accident. He also testified the plaintiff had an eight (8%) percent permanent partial disability of the hip of which three (3%) percent is attributable to this accident. Doctor Matza also testified that the plaintiff had a fifteen (15%) percent permanent partial disability of her back of which ten (10%) percent is attributable to this accident. Thus he attributes permanent partial disability of the neck of six (6%) percent, of the hip of three (3%) percent and of the back ten (10%) percent due to this accident. Mrs. Giglio treated with Doctor Matza from July 3, 1991 to the present time. He last saw her on January 3, 1994. He testified the problems the plaintiff had with her back, hip and neck prior to the accident would have become progressively worse with time even if she was not involved in the accident. He stated it was impossible to state how fast these problems would have progressed if the plaintiff had not been involved in this accident. It is interesting to note in Doctor Matza's medical report of June 4, 1992 he stated the plaintiff had a permanent partial disability of the right hip of eight (8%) percent and in his report of June 17, 1992 he stated she had reached maximum improvement with a eight (8%) percent permanent partial disability of the right hip, ten (10%) percent of the neck and fifteen (15%) percent of the low back. Then on his medical report of July 31, 1992 he stated she reached maximum medical improvement of her low back in December, 1991. Doctor Matza testified that he was not asked to apportion the percent of disability caused by this accident and that which pre dated the accident until (today) when he testified in court during this trial.
Dr. William Flynn, an orthopedic surgeon, testified for the CT Page 1680 defense in this matter. He examined the plaintiff one time on June 24, 1993. He took a history from the plaintiff on the day of his examination and reviewed various medical reports of hers. From that history and those medical reports he testified that the plaintiff had joint pain since 1989, and that x-rays taken for Doctor Brian Peck showed degenerative joint disease in 1990. He also testified that a 1990 MRI showed a bulging disc and a narrowing of the spine with no evidence of nerve compression. Doctor Flynn testified that the plaintiff suffered a soft tissue injury (ligaments and cartilage) in this accident. He stated that the plaintiff's complaints are real. He stated that he ascribed short term trauma to the accident but not permanent injury other than five (5%) percent permanency to Mrs. Giglio's neck. He testified that Mrs. Giglio has the permanent partial disability that Doctor Matza has given her, namely, twelve (12%) percent to the neck, fifteen (15%) percent to the back and eight (8%) percent to the hip. However, he stated none of that permanent partial disability was a result of this accident except for five (5%) percent of the neck.
The plaintiff's medical bills total $9,758.34 and are set forth in Exhibit B. Those bills are as follows:
Fitzgerald Ambulance Service, Inc. (6/12/91) $ 173.00 St. Mary's Hospital (6/12/91) 665.88 Naugatuck Valley Radiological Assoc. (6/12/91) 131.32 Marcia Getkowski (6/13/91 — 1/6/93) 680.00 Diagnostic Radiology Assoc. (6/13/91) 165.00 Waterbury Hospital-PT 638.56 Della Pietra Brace Co. (6/19/91) 60.00 Greater Waterbury Imaging Ctr. (6/29/91) 360.00 Greater Waterbury Imaging Ctr. (12/9/92) 875.00 Waterbury Hospital-PT 177.60 Waterbury Hospital-EEG (12/31/92) 327.12 Richard Matza (7/3/91 — 3/12/93) 1,550.00 Arthritis Ctr. of CT (7/8/91 — 11/18/91) 2,755.00 Electro Devices, Inc. (8/30/91 — 10/29/91) 187.52 Neurologic Testing Center (9/4/91) 420.00 Peter Greco (12/23/92) 145.00 St. Francis Pharmacy (6/12/91) — 12/16/91) 349.97 Pharmacy (1/10/92 — 3/12/93) 97.37 --------- TOTAL: $9,758.34
The court was impressed with the testimony of the CT Page 1681 plaintiff. She was a very credible witness. The court finds that prior to this accident on June 12, 1991 the plaintiff lived a normal life relative to her age and life status. However, this accident changed that so that at this time and ever since the accident the plaintiff has been prohibited from carrying on most of the activities she could and did perform prior to this accident, all as a result of said accident.
Therefore, the court finds the issues for the plaintiff on the complaint and awards her economic damage of $9,758.34 and non economic damages of $110,000.00 for a total award of damages of $119,758.34. In addition, the court awards the plaintiff costs including a fee of $500.00 to Doctor Richard Matza.
WILLIAM J. SULLIVAN, J.